Case 22-3265 Delano Hale v. Tim Shoop, argument not to exceed 30 minutes per side. Mr. Berman, you may proceed for the appellant. May it please the court. My name is Jordan Berman for Delano Hale. I'd like to reserve 5 minutes for rebuttal. I plan to focus on the forensic expert claim, but welcome any questions about the non-capital sentencing issue. This case is all about what transpired in Hale's hotel room on June 21, 2004. Hale has always maintained that he was defending himself from a sexual assault by a man who was over 100 pounds heavier and 7 inches taller than him and who had been previously charged with raping another man. The state, meanwhile, has always maintained this was part of a calculated execution and robbery based on its forensic evidence at trial used to undercut Hale's statement to the police, such as claiming that a single drop of blood on the headboard meant that Hale could not have been at the foot of the bed, as he claimed. In state post-conviction, Hale introduced a forensic report validating that his account is consistent with the evidence, a report trial counsel never pursued. This court should grant relief on this ineffective assistance of counsel claim for three reasons. First, trial counsel performed efficiently. Are you talking about the Rinney report? Yes, the Rinney report. It seems like there's what some have called the crime scene reconstruction expert, and that's him, right? Yes. And then forensic, I don't know whether we consider that forensic or not, but there's blood evidence, there are the other two, I think, experts or other two claims of other scientific evidence that might have come in. But are you just pressing the crime scene reconstruction expert? Just the crime scene reconstruction expert. Okay, and that's the claim that's preserved, was raised in state court, obviously, so it's subject to EDPA deference, but is also not procedurally barred. Right, the other experts were at habeas, so they were not yet presented in state court. Okay. Yeah, this is only the crime scene reconstruction. Okay, thank you. And, well, I guess I can just jump right to why EDPA doesn't apply in this case. So everyone agrees that it was preserved, it was presented on the merit. Okay, I'm sorry. I meant to say EDPA, it was presented. I understand you don't think deference applies. Yes. But there's no procedural default argument on it. This one was presented, that's what I'm saying. It was resolved, purported to be resolved by the state court, but I understand you have an argument that there shouldn't be deference, right? Yes, that's correct.  Okay. Yeah, there is no deference because it was contrary to clearly established federal law, as well as based in unreasonable determination of facts, although only one of those is needed to get past EDPA deference. The contrary to issue is that they used the wrong standard, a standard other than Strickland, to evaluate an ineffective assistance of counsel claim. And this court in Vasquez v. Bradshaw said that is not a casual error. Different standards lead to different outcomes, and that is the paradigmatic example of a decision contrary to clearly established federal law. And it was the same error in both that case and here, where they said counsel had to show that it would have been different but for the deficient performance, whereas Strickland is a reasonable probability that it would have been different but for the deficient performance. And the U.S. Supreme Court in Williams v. Taylor says that is diametrically different, opposite in character and nature, and mutually opposed to clearly established precedent. So if we go to the merits of the case, trial counsel performed efficiently by failing to even consult a forensic expert in a case where the state made the forensic expert testimony central to their case and discrediting the defense strategy. And here was prejudice, where there is a reasonable probability that with a forensic investigation, a juror would have at the very least come to a different balance with the statutory mitigating factors. And which statutory mitigating factor is that, or are there several possibilities? The two mitigating factors that counsel relied on in state court but did not support were 2929.04B1 and B2, that it was induced by the decedent and that it was under strong provocation. And they also cite the catch-all, yes, so responding to a sexual assault, what's that? Provocation by the victim and it was the victim's fault or generated by the victim. Yeah, that it was induced by the victim. Induced, that was the word, thank you. And that it was under strong provocation, which doesn't have to be from the decedent but is in this case. So certainly a responding to a sexual assault would fit into those categories. And that is the argument that counsel made at trial, both in their closing arguments at mitigation and in their sentencing memo. But they did nothing to support that. They relied completely on a health statement to the police. What was the, my understanding was, and maybe I misread this, but the trial counsel did ask for funds for a forensic expert. Is that right? At one point and it was denied? Is that right? No, so trial counsel submitted two boilerplate motions for funds for experts. There was nothing specific about the case in the motions other than Hale's name. And when it come to the expert need, it just said that the expert need will be provided upon request. So when the court asked what the expert need was, they said they didn't anticipate needing it. As the warden quoted on page 33 of their brief, which is also what they say in their affidavit. They simply didn't anticipate that it's going to be an issue. So the court didn't deny them funds so much as they never actually requested it. So, yeah, so as I was saying, they were, they relied on his statement without requesting any expert funds. And so, you know, when you get to closing argument, you have the defense saying only Hale knows what happens and quote, all we have to go on is speculation here. And you have the prosecutor saying, quote, the evidence, the science, the medicine supports that this was an execution. So the choice that the jury had in front of it was did this start as a sexual assault just based on Hale's word to the police or was this an execution robbery that had been planned for weeks based on what the prosecutor's expert says is definitive proof. So having a report from the crime scene reconstructionist would have been a game changer because it would have allowed the jury to believe Hale's version that this started as a sexual assault. And it would have been a lot more consistent with the other forensic evidence. For example, they said the state introduced a picture of Green wearing all this gold jewelry and said that's why Green was targeted. But when they found Green's body, he still had all the jewelry on him, which was real gold. And he did not have any of his clothes on him, which was more consistent with, you know, this starting as a sexual assault in Hale's version where Green was stripped down after Hale exited the bathroom. Didn't Hale's story require Green to have stood up during the middle of these events? No. The expert, your expert that you think should have been retained, at least, didn't opine on that issue, didn't address that issue. It was a key part of Hale's story that didn't really add up with what the government's forensic expert showed. Right. So he did not actually say that he gets up from the bed. And that was the basis for the unreasonable determination of fact, which Judge Leoy agreed was an unreasonable determination of fact. What was unreasonable? How much was it? I mean, did he move at all? How much of it was unreasonable? So what? He had to have moved in some way, right? Yeah. All that Hale says after the first two shots was that he perceived that Green was attempting to stand. And the deputy coroner testified at trial that there was no voluntary movement, but there could have been nerve twitching. So it could have looked like he was attempting to stand if he was just twitching. The state court says that he was getting up from the bed, that he was moving towards Hale or advancing towards Hale. And so they used that as a reason to undercut the statement and undercut Reney's report because they said that, you know, that there wouldn't have been movement at that point or there wouldn't have been getting up from the bed at that point and that he couldn't have been advancing towards him if the trajectory of the bullets was from the side, the right side of his head towards the front. But Hale never said those things. All he said was he perceived that he was attempting to stand and that is consistent with trial evidence. Reney doesn't say, Reney doesn't support that he was, that he, Reney doesn't say anything about this nerve reaction issue. No. That was all just based on evidence at trial. The counsel did argue that it could have been the nerve twitching that he perceived as attempting to stand. So I don't believe Reney was even asked to go into that. Why? That seems like something he may have wanted to opine on that would have helped your case and feels to me a little bit absent not being there. Well, I don't know if that was in his area of expertise. Well, you had to provide evidence to counter. If it wasn't, you had to get another expert to say, you need to have another expert to potentially address that. Sure, but already counsel at trial was saying there's nothing like that, this nerve twitching was perfectly consistent with Hale's description. So I don't know if there's anything more that needed to be rebutted. The evidence of that, Reney. Did he say anything about the gunshot residue on his hand, on Hale's hand? Did Reney? No, so Reney mentions it and then he comes to the conclusion that all of the crime scene evidence is consistent with Hale's version, but he doesn't explain how the gunshot residue factors into that conclusion, which certainly would have been helpful. But again, if you look at the actual trial evidence, it's not probative, it doesn't contradict his statement. So the prosecutor asks, could gunshot residue be deposited on a victim's hand through a defensive movement? This is trial transcript 2468. And Jones from the trace evidence unit responds, if the hands were in close proximity to the weapon at the time it was discharged, in my opinion, there could be gunshot primer residue there. So all he says is the hand was in proximity. The prosecution runs with that to say it must have been defensive position, but that was not the actual testimony. And the defense does not respond because this is part of their pattern of not paying attention to the forensic evidence. The two pieces of forensic evidence that Reney does address are the trajectory of the bullets, which he says is perfectly consistent with Green having his head down to the left, which fits into Hale's narrative. And how does that fit with his narrative if he's on the bed having been disabled by the two other shots? How could all four shots have that? Because so I was trying to act this out with my co-worker. So what he says is that Green like presents his head and says it's not loaded anyway. So that would have been the first couple of shots. And then if he's on the bed and Hale thinks he's trying to get up and he shoots him a couple more times in the back of the head or in the side of the head. But how? I don't understand. He goes back and he reloads the gun. Then he goes back to him and then at close range, essentially consistent with the other two shots, happens to do what looks like the exact same thing, but in two completely different kind of situations where the person at one point is struggling, right? So he says he's got him by the wrist and that's when he shoots him. And then he's on the bed, presumably not moving. Maybe he's twitching, whatever. And then he goes up and what, just shoots him again? Like puts the gun to his head and just finishes him off? Is that what, like I just, like I thought he said he was, you know, it sounded to me from his statement like, oh, I was scared that he wasn't, you know, dead or whatever. He was coming back to get me. So I, you know, shot him again. But I don't see how that's, how is that consistent with the other two shots? Like the same, the physics of them seem to be very similar. Well, if he's lying face down on the bed and twitching, then it could have been there. I think the best way to view this, you know, if the jury believes that this is, that this began as a sexual assault and would have had the ability to do so, then this is a disproportionate trauma-based response. There was evidence at mitigation that Hale had been repeatedly orally raped as a child starting at age 7 or 8. And so, you know, he obviously was in not thinking straight once the shooting started. And if he perceived himself in a continuing danger that he sees green moving and he doesn't think that he's out of danger, then that would account for the last two shots. And so that could have made a very big difference at mitigation as opposed to the states version where he had always been planning to shoot a person in his own hotel room and then have to do something with the body of a person much larger than him. Can I say something about the deference issue? Sure. I'm not sure, you and Judge Nalbany discussed it at the beginning and I may not have completely followed the argument, but the state court of appeals decision concludes with this line or the relevant section because Reeney's expert report does not refute the state's evidence, counsel is not ineffective for failing to retain him, and there is no reason for the trial court to conduct an evidentiary hearing. Is that a holding on the performance prong or the prejudice prong or both or neither? How do you read that? We read it as the prejudice prong and that's the way that Judge Leoy read it as well. Why do you say that? Why couldn't it be the deficient performance? Because he's not saying this was reasonable trial strategy, he's saying it wouldn't have changed the outcome, again using the wrong standard because it didn't refute all of the state's evidence. Counsel is not ineffective for failing to retain him. I don't know how do we know that he was not ineffective for deciding not to retain him because it was his judgment that he wouldn't have changed the outcome of the case, he wanted to focus on other parts of the case. I just don't know how to splice it that way, that it has to be the one and not the other. The language is unclear, so he could be referencing both prongs, but it seems at the very least they're referencing prejudice because they're coming to the conclusion that it would not have changed the outcome. Suppose we think it's referencing both prongs, what do we do? Do we then give deference on both prongs? Well, no, because it's contrary to clearly established federal law. He uses a different prejudice standard than Strickland. I would compare this to Porter v. McCollum where they say even where there's issues with the expert there, it's not reasonable to discount the effect this could have had on a sentencing judge or a jury, where Williams v. Taylor kind of parses it the same way. So I give a threshold point. Suppose that's the one line in the opinion that you think misstates the Strickland standard, I think. The line that misstates the Strickland standard is in paragraph 13 where they say would have been different but for counsel's deficient performance, this is where they apply it. So once they've used a standard that's contrary to clearly established federal law, there is no deference on either prong. Perhaps the best Sixth Circuit case to compare this to is Rischie v. Bradshaw where they say there is enough circumstantial evidence left that maybe they could have still convicted him of forensic evidence. That's an arson case where he told multiple witnesses that he was going to torch the place and where he was at the scene of the fire when they showed up. But this court said, you know, even though it might have led to a conviction, quote, the question before us is not one of sufficiency of the evidence but of undermining our confidence in the reliability of the result. So why would we, if I just heard you correctly, why wouldn't we give deference on the performance prong? Because if an adjudication of the claim under 2254 results in a decision contrary to clearly established federal law, then epideference no longer applies to the claim. Like Panetti v. Quarterman spells that out pretty well, saying that if the adjudication was dependent on this unreasonable application or contrary to standard, then that's all you need to get to D1. But there's no question that they correctly stated the performance standard the right way, right? They stated the, well, they said that counsel needs to be deficient, yes. What's that? Yes, they stated that you need to show deficient performance. Well, I mean, they say it's highly deferential, must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Yes. That's good, right? That's fine. Yeah. And then they conclude that counsel was not ineffective, right? So why is there no deference? You're saying I can't, or the court couldn't parse that out so that there would be deference on that particular part of it? I mean, I understand the claim. In order for the defendant to win the claim, you have to show both, right? But you could lose for failing to show either one, right? Well, that's not, in terms of the deference question, that's not the way that the Supreme Court has treated it. It's if any part of the claim, if the state court relied on a standard contrary to clearly established federal law or an unreasonable application, then that's D1. I would also note that there was this unreasonable determination effect that would also affect the court's analysis if it was not, if it didn't already think that this was contrary to. So there should be no epideference here, even on the performance prong. And on the performance prong, it's very clear that this was deficient, that this wasn't a strategic decision to which we would defer. We know that because there is an unrebutted affidavit from trial counsel admitting that it wasn't strategic. And this would have been consistent with their trial strategy, as I mentioned, those statutory mitigating factors. And no strategy can excuse failing to conduct an investigation. That's Williams, Wiggins, Rompia. It's very clear that they should have been on notice that this was going to be an issue. They had the witness list. They had the forensic reports from the state. They had the state's opening argument months later saying that this evidence was going to contradict Hale's statement. And they never asked for any funding beyond those boilerplate motions that they said they didn't actually want. So to the extent that this court is reviewing the deference prong, it would be an unreasonable application of Strickland to find that this was a reasonable trial strategy. In terms of the prejudice prong, while we don't have a statement from the jury, we do have a statement from the sentencing judge where he repeatedly relies on this forensic evidence. Where he says that he can't rely on Hale's statement because it's unreliable, it's refuted, because the state presented, quote, credible forensic evidence that directly contradicts essential portions of Hale's statement. So it's clear that that is what the court was focusing on. In the guilt phase, it said, responding to a motion for acquittal, that there was very little evidence other than the forensic evidence to support an ambush and assault for the purpose of a robbery. But then by the time you get to the sentencing phase, it relied on that forensic evidence to say that there's no credible evidence of a sexual assault. So if there had been a crime scene reconstructionist, it would have allowed the jury and the sentencing judge to examine that possibility and to give weight to the mitigating factors. And that would have been the difference. This should never have been a death penalty case. This was a sexual assault that ended in a death and all of the evidence beyond the forensic evidence is much more consistent with how Hale described this event occurring. He goes out and he buys cleaning supplies with Green's credit card, with the decedent's credit card. Why wouldn't he have had cleaning supplies before if he'd been planning this for weeks? Why would he have used his own shopper's reward card when he did that if he were thinking straight rather than, you know, in a panic after having just ended a life for the first time that he was not expecting? I see my time is up, so I will reserve the rest for rebuttal. Thank you. Thank you, counsel. We'll hear from the state. May it please the court, my name is Brenda Likala and I represent the warden. First of all, this case on the Strickland, for the very first time in this court, not at the district court, is the petitioner raising a D-1 argument. In district court, the argument was entirely a D-2 argument. Other than the boilerplate paragraph at the end of the claim on the petition, that is the only mention of the D-1 standard for this claim. In their traverse, they specifically only argue the D-2. It's not until we get here that they start arguing that there should be no deference based on an unreasonable application of Strickland. And I would argue that, one, that it's not properly before this court because it was not raised below. And two, even if this court could reach the D-1 argument, it should not find that there should not be deference because the state court denied the claim on deficiency. And with Strickland, if you do not meet both prongs, you don't get relief. But do you agree that the statement regarding Strickland prejudice was incorrect? Yes, Your Honor. As I indicated in our brief, the state court did, in paragraph 13, misstate the Strickland standard. Can't get around that. But they didn't need to even get there because they found that there was no deficiency. And so once a court finds a failure on one prong, they do not need to continue to analyze the claim under the second prong. I mean, your opponent says that that's not right. Once they make a mistake on any part of the claim, then there's no deference on any part of the claim. I would argue that that's incorrect, Your Honor. What does the case law say? Your Honor, the case law says that in federal court, a Strickland claim is doubly deferential. So the claim is not in federal court whether you sitting as a three-judge panel in the first instance would find a Strickland error. It is whether the... It's not the claim, right? I mean, we talk about a Strickland claim. I mean, both prongs of Strickland are part of it. So I guess I get back to the question that I asked before, which is if the state court is correct in stating the legal standard on prong one, incorrect on prong two, and they make a prong one finding, do we give the deference on prong one only? And your answer is yes, right? Yes, Your Honor. You give the deference on... Do we have a case on... Is there a case that squarely rejects the argument or on its facts clearly moves beyond a misstatement on one part of Strickland and applies the deference on the other one? Well, Your Honor, I cannot think of a case that specifically says that when it comes to this fact pattern, whereas this fact pattern is they misstate the test on prong two, but they never make a ruling on prong two. So the case law would be whether they made an improper ruling based on the improper standard. And in this case, they didn't make an improper ruling because they didn't even get to that part of the test because they stop at the end of the deficiency prong. So you're saying that the stated error in paragraph 13 was just sort of a statement of law error but wasn't followed up on as connected to this case? Not as connected to this claim, Your Honor. The opposite view would be that misstating even the prejudice standard affects the reliability of the performance standard. Is that really what we have to decide between? I believe that that is what Hale is requesting the decision on. But those two prongs are separate and distinct. And if you don't have one prong, then ample courts, including the Strickland court, have said you don't need to continue on and look at prong two if you've already failed prong one. Because you have to have both. How do we know this was a prong one decision? I believe that the wording of the decision that you quoted already clearly indicates that it is based on deficient performance. They're talking about... Were you going to... No, go ahead. I was looking back at it. I'm glad we're on the same language, so go ahead. But they were looking at whether it was deficient for counsel to not get these experts. And if you look at the record, it's clear that the trial counsel's analysis of the claim and their theory of the case was not to attack the forensics. I believe that they said we're not going to... I think it was insult your intelligence, I think is the quote that they used, and say that Hale didn't kill him. They're saying he didn't have the mens rea to commit capital murder. They argue for self-defense. They argue for murder. They argue for voluntary manslaughter. They are arguing the lesser included. They're not disputing that Hale is the shooter. It's not a whodunit case. So the forensics don't really come into play when they're arguing mens rea. Well, your friend on the other side said it was... The line that I read, he initially thought to say that was addressing prejudice, not deficient performance. You're saying it's clearly deficient performance. So could it be both? I do not believe that it could be both. I believe that it is properly analyzed as it's deficient performance. What if it was both? Isn't that helpful to you? Even if it is both, you know, yes. I mean, because you have to have both. You have to have both. If we have this sentence that could be read one of two ways, should we apply deference to... Should we assume that deference would apply either way? Because we're not entirely clear what the court did? Well, your honor, in this case, you should not even entertain the D1 argument because it's not properly before this court. Deference would be, you know, step one. So answer number two. Suppose we didn't... I heard that. Suppose we didn't... If I push that, put that aside. If you do reach the D1 argument, then deference should apply because they did not find, and properly did not find deficient performance. And so therefore, deference should apply because they didn't even have to reach prong two once they found no deficiency. It's unclear I could see a case for us granting deference on either prong because the court could have reached... That could be read to reach... They've obviously decided something. It could be either one, so we could give deference on both prongs. Your honor, at this moment, I cannot, with good conscience, give you a case name without being able to... That's okay. No, it's all right. But again, the issue before this court is not whether these attorneys were ineffective. It is whether there's any reasonable argument to support the state court's decision that counsel satisfied Strickland. I'm not following the argument, though. Let's just... So counsel's... Counsel's pursuing a mens rea defense. How is it that the scientific evidence wouldn't be relevant to that? I mean, you have to... You can back up your claim. You've got... There's two people in the room. I've got a claim of self-defense. Essentially, the guy's coming after me or he's trying to rape me. Why would I not need scientific evidence that was going to support my argument? Well, your honor, the... Part of the mens rea that he is attacking is the purposefully and the prior calculation and design. We need forensics to prove that. Because if it's not purposely or with prior calculation and design, it's not capital. Right. So the state's argument... The state's theory is execution-style killing to rob him, okay? And the defense says no. And the state says, well, there are four close-range wounds. The way the body is found, the blood spatter. There can't be anything but our theory, which is an execution-style killing. So it seems to me, if I'm a juror, I want to hear from some scientist or somebody who says, oh, no, no. This easily could have been the other way. If you look at this blood evidence and the way your head could move or whatever, I mean, I guess... I mean, I'm not saying it was deficient necessarily. You make strategic choices. Every attorney makes strategic choices. But, I mean, surely it was a path that they could have gone down, and maybe it would have been the better path. Well, but, Your Honor, that's exactly what Strickland challenges courts to not do, is to not Monday morning... Maybe it's a path any reasonable attorney would have gone down. Well, Your Honor... Defending a capital case. Again, the piece that they had been really attacking was this purposeful and prior calculation and design. If you don't have prior calculation and design, there wasn't this days-long planning that he was trying to lure Greene there. That is what they were attacking. It was a... Hale's statement goes to, this is a spur of the moment. He thinks that he's going to be attacked. Instead of turning around and walking out the door that's behind him before Greene can even grab him, he actually walks up to Greene, giving him his clothes and saying, get dressed, according to Hale's statement. Right, yeah, no, I get all that. All I'm saying is, okay, my story is this was a spur of the moment thing, and by the way, look at all this evidence. Look at all this scientific evidence that supports my story that this was a spur of the moment thing, and this scientific evidence disproves the state's prior calculation and design, in addition to the non-forensic, non-scientific evidence, you know, I didn't steal his jewelry, you know, all of the other, whatever the other evidence is. It's all part of this, you know, you put it all in the mix. Well, and in hindsight, maybe they should have, but they didn't, and it was reasonable that they didn't because of the way that they were attacking the case. They were attacking the case from the standpoint of no prior calculation and design. And, Your Honor, as you pointed out, after he reloads the gun, he goes back and shoots him two more times, because according to the testimony, this gun only holds two bullets, so he had to reload to shoot four times. And he, in his statement, says he reloads, but in order to get those four bullets all in the exact same place, he goes back and shoots him in the exact same spot. That, I would argue, you know, if I was the prosecutor, that is the prior calculation and design. He went back. The reloading the gun is the prior calculation and design. And no forensics is going to combat the fact that four bullets go in, like, the same general hole. That's just, as you pointed out, implausible if he's flopping around in the beginning, you know, grabbing him, and then he goes back and shoots him, unless it is an execution-style killing, which is exactly what the State's theory was. And no, he didn't steal all of the jewelry. But was there a robbery? He takes his credit card. He uses his credit card to go and buy the cleaning supplies to clean. And he's living out of the victim's car, or SUV. So he has taken possession of the vehicle. That's where the robbery is. But... I mean, that's kind of an odd robbery, isn't it? Number one, the cleaning supplies. I mean, that seems... The robbery is the cleaning... No, the robbery is the credit card. The credit card, right. I mean, it's not... And the vehicle. Right, but why leave the jewelry? I mean, it just seems... It does seem strange. Well, it may seem strange, but, you know... The clothing? I mean, what... I believe he... I believe that the testimony was... And it may have come through his statement, or his statement to the police, was that he disposed of the clothing. So... The... The robbery itself is the taking of the victim's items. And for prior calculation design, it doesn't need to be something that's planned days in advance, and it was, I'm going to do this to lure a victim in. Prior calculation design can be very quick in time to the action. And arguably, that is what happened here. Would that mean for the causing death part, though, if the first two shots had killed him dead, and the prior calculation design is the second two shots, then it wouldn't get you there, would it? Arguably, that would be correct. However, a plan could be formed at the very get-go, because Hale knew, even before he went to the bathroom, if taking his statement as true, he knew before he went to the bathroom, when he came out that Green was on the bed naked, according to him, that Green had a gun. And instead of... He's so afraid that Green is going to assault him, that he walks out of the bathroom, the door is right behind him. Green is in front of him. Instead of turning and walking out the door, to avoid any sodomy, he goes up to Green, goes into his bag, and grabs Green's gun, and shoots him at close range. So the plan, the purpose, and the prior calculation is walking forward, going into the bag, allowing himself to be grabbed. And under his story, now it's Green's gun, so where does he find Green's bullets? In his bag, is what his statement... He presumably knows, or discovers, that there's Green's bullets in Green's bag for Green's gun. None of which are his. That is what his statement is. And the fact that Council made the strategic decision to attack this prior calculation and design, and no purpose to commit robbery, is evident by their closing, which begins at transcript document 8-5, page ID 7067, is where this begins in the closing arguments of Defense Council, where they are attacking the purpose, and attacking the robbery. That is what they're attacking. They tell the jury in their closing, we're not going to insult your intelligence. Yes, he did this. Yes, he moved the body. Yes, he tampered with the evidence in moving the body and cleaning the room. We're not going to tell you otherwise. What we're telling you is, he had reason to do this. And he didn't just go out to lure Green to his hotel room when he knew he had to check out the next day. So it is clear that the entire defense theory of the case is to attack the mens rea, not the forensics. And it's important to note that in this case, they were also arguing for lesser included offenses. There were lesser included offenses of murder and voluntary manslaughter, if they were unsuccessful. In their self-defense argument, those begin at document 8-5, page ID 6972, where they are talking about arguing for the lesser included. Going to the Court of Appeals argument, the State Court of Appeals, they found that Renie did not completely refute the state's case. And so therefore, counsel was not deficient in not presenting an expert such as Renie. And in fact, the district court correctly rejected two of Hale's claims of factual error, because Renie's report did not include an analysis about the gunshot residue on the hand. And the court's omission, it says, in its analysis of the expert's opinion regarding the blood spatter, was less than error. And that's at the district court's opinion at page 258, Lexis Pinpoint site 258. When Hale talks about the State Court of Appeals misrepresenting Hale's confession, his written confession, he fails to state that the State Court of Appeals properly did state the confession several paragraphs away. Two paragraphs earlier in the opinion, the State Appellate Court accurately recounts Hale's written statement saying Hale fired the gun again while backing away toward the mirror. He was not sure whether Green was incapacitated, so he retrieved some bullets from the victim's bag, reloaded the gun. When the victim again attempted to stand, he fired once or twice again. That is what Hale said happened in his written report. So the fact that the State Court may have a couple paragraphs later said something slightly different, they did have the correct standard or the correct factual findings in there. And again, because this is a Strickland case, the question is whether there's any reasonable argument to support the State Court's decision that counsel satisfied Strickland. It is not the Strickland analysis as if you were sitting on direct review. This is a doubly deferential standard under AEDPA, and for those reasons, unless there are any other questions from the panel, I will sum up. Thank you. For those reasons, we would ask that you uphold the decision of the District Court and deny habeas relief. Okay. Rebuttal? So we agree this is not a whodunit case, but the forensics go directly to how did this occur? And that's not me saying that, that is the prosecutor saying that over and over. For example, in their sentencing memo, letter covered on the headboard showed that the victim's blood had only traveled a short distance from where the victim had been shot. The State's evidence proved beyond a reasonable doubt that the defendant committed a, quote, uncalculated execution slash aggravated robbery. They repeatedly relied on this to say it couldn't have started as a sexual assault. It was the State's position at trial to say maybe this did start as a sexual assault, but you should convict him of aggravated murder anyway. They said this did not. That, you know, the other victim of Mr. Green who said that he had been raped was lying and that that was consensual because they knew that if this started as a sexual assault, that would be very mitigating evidence and that would not be what you would think of as a death penalty case and would not be what the jury would think of as a death penalty case. Perhaps the best case from this court to compare it to is Stirmer v. Warren where they said it was ineffective not to retain someone to help respond to the State's expert testimony where it's the only physical evidence supporting the State's felony murder charge. In that case, they also had statements of the defendant that they were relying on, but they didn't support it with forensic evidence that would have called into question whether an arson in that case even occurred. Did I hear you say that this case had no physical evidence? They did nothing to address the physical evidence. The only physical evidence that the State used to say that this was a planned robbery and execution and not a sexual assault that counsel did nothing to address that. So there was physical evidence in this case that they did not address. In Williams v. Taylor they say even where this might not have overcome the State's case, it still would have been part of the jury's appraisal and so they granted relief there. Even if we take the argument that if this started as a sexual assault, maybe it could meet the standards for an aggravated murder, you still cannot ignore the effect this would have had on mitigation. There's a reasonable probability that you wouldn't have met the standards for aggravated murder. In terms of the D1 argument and whether that was waived, we, on page 21 of our reply brief, we note all the times we raised this contrary to argument below. We did not spell it out as much as we did here. We focused more on the unreasonable determination of facts. I mean, Judge Leoy didn't seem to think that you were making a D1 argument, is that right? That's true. She doesn't say anything about it in her opinion. Yeah, and we probably could have expanded on that. There's no question that we could have, but I would point to this court's decision in Brown v. Smith, for example, to say a party cannot waive the proper standard of review for failing to argue it. That is a determination that this court makes when they look at the state court opinion. That's not something that we can concede or waive. And it is clear that they did decide prejudice on this case. I would agree with you that if they were only deciding deficient performance, then it wouldn't matter if they misstated the prejudice prong. But, you know, to say because Raney's expert report does not refute the state's evidence, that at the very least is talking about prejudice. If they do not talk, if they are not addressing prejudice, then that would be de novo. And if they are only addressing deficient performance, which does not appear to be the case, then, you know, a lack of investigation can never be strategic. That would also be an unreasonable reading of Strickland. Finally, they do, the state court does say that Greene was attempting to stand at one point in the background. But when they actually apply the facts of the case, they are misapplying the wrong facts. And that is why it is unreasonable determination. This court's decision in Cassano versus Shoup, it was the same. They said some of the facts correctly in the background, but when they actually applied them, they apparently forgot what they had written earlier. And when they actually did the application, it was the wrong facts. Where is the discrepancy between whether he stood or didn't stand or, quote, tried to? Is that the discrepancy? Yes, so he said, he perceived that Greene was attempting to stand. Hale's statement, is that correct? Hale's statement says that Greene was attempting to stand. The court says that in the background, but then when they actually do the application, they say that Greene was getting up from the bed, that he was advancing towards Hale, that he was moving towards Hale. The discrepancy is between, quote, attempting to and, quote, getting up and advancing. Yes. Is that what you're saying? Okay. Judge Leoy quotes the prejudice prong, right? Yes. When she resolves it. Yes. Okay, so that suggests that she thought it was a prejudice finding. Is that right? Yes. Does she read that as a prejudice finding? I mean, that would support your argument, wouldn't it? Yes. Her reading? Yeah, and I want to make clear that, you know, Judge Leoy says that she cites the right standard, and she says that she is deferring to the state courts finding that this was a reasonable probability, but, of course, the problem there is that the state court never made the finding that this is a reasonable probability, so no court has yet addressed this claim under the actual Strickland standard.  Great. Thank you, counsel. Thank you, Your Honor. Thank you. The case will be submitted.